UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PAUL DAHLGREN, as Personal
Representative of the Estate of
DAVID AND MARY DAHLGREN, Deceased,

Plaintiffs,                                           CASE NO. 1:06-cv-00065-MP-AK

vs.

JERRY MULDROW AND SCHNEIDER
SPECIALIZED CARRIERS, INC.,

                    Defendants.

_____/

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MEMORANDUM IN OPPOSITION FOR SUMMARY JUDGMENT

PLAINTIFF, PAUL DAHLGREN, as Personal Representative of the Estate of DAVID AND MARY DAHLGREN, Deceased, by and through his attorney, Scot D. Goldberg, Esquire, hereby responds to the Memorandum submitted by Defendants, JERRY MULDROW (Muldrow) and SCHNEIDER SPECIALIZED INC. (Schneider) in opposition to Plaintiff's Amended Motion for Partial Summary Judgment. The issues raised by Defendants Muldrow and Schneider do not constitute material issues of fact in dispute warranting the denial of Partial Summary Judgment as to liability against Defendants Muldrow and Schneider.

Defendants, Muldrow and Schneider, raise four issues of disputed fact which Defendants contend precludes Summary Judgment against them:

a.     That Florida State Statute 316.1235 is not controlling;
b.     That admissions made by Defendant Muldrow in his deposition should not be considered since Muldrow did not understand those questions posed to him at his deposition;
c.     That statements made by Caleb Pierre should not be considered by this Court; and

d.   That the deposition testimony presented by David A. Stopper should not be considered by this Court.

1.   **Defendant is unable to proffer sufficient testimony to raise an issue of fact as to whether Section 316.1235 Florida Statute governed traffic at the intersection of US Highway 301 and State Road 26.  The above referenced statute provides as follows:**

>   **316.1235 Vehicle approaching intersection in which traffic lights are inoperative.**
>
>   The driver of a vehicle approaching an intersection in which the traffic lights are inoperative shall stop in the manner indicated in s. 316.123(2) for approaching a stop intersection. In the event that only some of the traffic lights within an intersection are inoperative, the driver of a vehicle approaching an inoperative light shall stop in the above-prescribed manner. A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318.

It is clear that Section 316.1235, Florida Statutes, was enacted to govern traffic at an intersection in which the traffic lights become inoperative.  This foregoing statute states that when the traffic lights are inoperative, Section 316.123 (2) for approaching a stop intersection applies.

>   **316.123 Vehicle entering stop or yield intersection.--**
>
>   (2)(a)  Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection.

(b)  At a four-way stop intersection, the driver of the first vehicle to stop at the intersection shall be the first to proceed. If two or more vehicles reach the four-way stop intersection at the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.

Section 316.123(2) (a), Florida Statutes is unambiguous; the only circumstances when this section would not apply are when a driver is "directed to proceed by a police officer" or "directed to proceed by a traffic control signal".  From all the testimonial evidence presented to this court it is clear that at approximately at 8:15 p.m. on September 20, 2004, at the intersection of US 301 and State Road 26, (the site of the fatal traffic crash), the traffic signals were inoperative, and there was no police officer present directing traffic.  Additionally, the only traffic control signals were the inoperative traffic lights at the intersection of US 301 and State Road 26.

Florida State Statute 316.003, titled "definitions", states: "the following words and phrases, when used in this chapter, shall have the meanings respectively ascribed to them in this section, except where the context otherwise requires".

**316.003. Definitions**

**(24) Official traffic control signal.** --Any device, whether manually, electrically, or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed.

Unequivocally, based on Florida law, the temporary barricade type stop sign put in place by a carpenter, Michael Pons, employed by the Florida Department of Transportation, was not a traffic control signal and placed no additional requirements on Dahlgren approaching an intersection where the traffic signals were inoperative, but merely reinforced State law.

The temporary barricade style stop signs, in place on State Road 26, pursuant to Florida

Statute 316.003 (23) were traffic control devices.  Florida Statute defines traffic control devices

as follows:

**316.003. Definitions**

**(23) Official traffic control devices.--**All signs, signals, markings, and devices, not inconsistent with this chapter, placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning, or guiding traffic.

Therefore, both Muldrow and Dahlgren were required to stop at the intersection of U.S.

301 and state Road 26, pursuant to Section 316.1235, Florida Statutes (2004), and treat this

intersection as a four way stop intersection, pursuant to Section 316.123, Florida Statutes

(2004), since there was neither a police officer nor traffic signals directing traffic.

The wrongful death action of Gulley v. Pierce, 625 So.2d 45, (1st DCA 1993), involved

an issue where a truck driver failed to stop at an intersection controlled by a blinking caution

light that was not working.  In Gulley, the trial court refused to give the plaintiff a requested

jury instruction relating to the truck drivers' violation of a uniform traffic control law;

specifically, Section 316.1235, Florida Statutes, which require a vehicle to stop when

approaching an intersection where traffic lights are inoperative.  The defendant responded to

the appellate court that the instruction relating to a violation of Section 316.1235 was

inapplicable to the issues tried.  Defendant stated that because the statute refers to an

intersection controlled by "traffic lights" (which signifies only the standard red, green and

yellow traffic lights which alternately stop traffic and then permit it to proceed), and the

evidence produced at trial showed that the signal that the defendant truck driver approached, if

operable, would have revealed a continuous flashing caution signal (which directs motorists to

proceed through the intersection only with caution).

The appellate court stated,  "We think it inconceivable that the legislature would sanction the potentially dangerous consequence that could attend a motorist's failure to stop before proceeding into an intersection where any traffic control signals are inoperative." Additionally, the <u>Gulley</u> Court stated:

> Two types of traffic control devices are defined within the Uniform Traffic Control Law. Official traffic control devices consist of "signs, signals, markings, and devices, ... placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic." <u>§ 316.003(23), Fla.Stat. (1989)</u>. The other, designated an official traffic control signal, is defined as "[a]ny device, whether manually, electrically, or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." <u>§ 316.003(24), Fla.Stat. (1989)</u>. Because flashing red and yellow signals, described in <u>section 316.076</u>, do not control traffic by alternately directing it to stop and proceed, they are obviously not the type of signals defined in subsection (24). Nevertheless, an illuminated flashing signal is clearly included within the general definition of an official traffic control device under <u>section 316.003(23)</u>, in that it is a signal which regulates, warns, or guides traffic.

Again, as in <u>Gulley</u>, the temporary barricade style temporary stop sign, is not a traffic signal, in that it does not control traffic by alternatively directing it to stop and proceed, and would have no effect on  the requirements imposed by Section 316.1235, Florida Statutes, which required Muldrow to treat the intersection as a four way stop.

Defendants attempt to support their position by incorporating portions of the depositions of Corporal Brian Speigner and Michael Pons.  However,  their opinions, beliefs, and reasoning, are absolutely irrelevant, in that whether or not Section 316.1235, Florida Statutes, controls is a matter of law, not a matter of fact. Therefore this is an issue properly

determined by the Trial Court.

No only was Dahlgren in compliance with Section 316.1235, Florida Statutes, he was also in compliance with Section 316.074, "The driver of any vehicle shall obey the instructions of any applicable official traffic control device".

Although Defendants assert that 316.1235, Florida Statutes, is inapplicable since FDOT was controlling the intersection by placement of stop signs for State Road 26, they cite no legal authority for this premise. Florida law is clear and unambiguous as to the law where a traffic signal is inoperative.  Websites of the Florida Department of Transportation and other governmental and professional agencies address this issue and consistently refer to the applicable law:

(1) *Florida Department of Transportation website, MyFlorida.com*

Obedience to traffic control devices.
(Section 316.074, F.S.)

‣ The driver of any vehicle shall obey the instructions of any applicable official traffic control device.

Comment:  Traffic control devices that present "instructions" include traffic regulatory signs (signs with white or red backgrounds), signals, and pavement markings.

Traffic control signals
(Section 316.074, F.S.)

‣ A driver shall comply with indications of traffic control signals.

Intersection where traffic lights are inoperative
(Section 316.1235, F.S.)

‣ The driver of a vehicle approaching an inoperative traffic light [signal] shall stop as for a stop intersection [stop sign].
www.dot.state.fl.us/safety/ped_bike/laws/ped_bike_bikeLaws3.htm - 26k -

(2) *Official Website of the City of Jacksonville, Florida, www.coj.com*
Traffic and Pedestrian Signals FAQs

What should a driver do when approaching an intersection in which the traffic signal is not working?

This question is answered by Florida Statute 316.1235 which is given below in its entirety.

Florida Statute 316.1235, Vehicle approaching intesection in which traffic lights are inoperative.

The driver of a vehicle approaching an intersection in which the traffic lights are inoperative shall stop in the manner indicated in s. 316.123(2) for approaching a stop intersection. In the event that only some of the traffic lights within an intersection are inoperative, the driver of a vehicle approaching an inoperative light shall stop in the above-prescribed manner. A violation of this section is a non-criminal traffic infraction, punishable as a moving violation as provided in chapter 318. (Chgd by L. 1999 ch. 248(120). Eff. 6/8/99)

www.coj.com/NR/exeres/A0459DDF-E4CE-430A-B71D-84C00E1C21A0.htm?

(3) *City of Ft. Lauderdale, Florida, Website, www. ci.ftlaud.fl.us*
Driving Safety Tips -- Promoting Safety on the Roads

It is no secret that the City of Fort Lauderdale has become a favorite destination for many people. And whether folks come here to live, work or play, we all share one thing in common - - we all drive! Unfortunately, many drivers are not as familiar as they should be with traffic laws intended to promote safe and courteous driving.

In an effort to raise awareness of existing laws, the Fort Lauderdale Police Department is highlighting one particular traffic law (otherwise known as a Florida Traffic Statute) designed to promote safety on the roads. This statute is especially significant now, considering how active our storm and hurricane season has become. In the months to follow, the City of Fort Lauderdale will highlight other traffic laws on the City website to promote safe and considerate driving by all residents and visitors in the area.

Florida Traffic Statute 316.1235
Vehicle Approaching Intersection in Which the Traffic Lights are Inoperative
"The driver of a vehicle approaching an intersection in which the traffic lights are inoperative (are not working) shall stop (as if it were a stop sign)..."

In other words, if the traffic lights at an intersection are completely or partially out (which occurs often during the South Florida storm season), all drivers shall come to a complete stop before entering this intersection, just as you would if a stop sign was posted at the intersection.

ci.ftlaud.fl.us/driving_tips.htm - 11k

(4) *Institute of Transportation Engineers Website, www.floridasectionite.org/*
Traffic Information Program Series - Revised 2003 TIP - No. 69
WHAT DOES A DRIVER DO WHEN APPROACHING A MALFUNCTING TRAFFIC SIGNAL?

Florida Statutes, Section 316.1235, states: "The driver of a vehicle approaching an intersection in which the traffic lights are inoperative shall stop in the manner indicated in s. 316.123(2) for approaching a stop intersection." This condition of inoperative traffic lights causes the intersection to be treated as an "all-way" stop.

Florida Statutes, Section 316.123(2)(a) states:

(2)(a) "Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a STOP sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection."

Florida Statutes, Section 316.123(2)(b) states:

(b) "At a four-way stop intersection, the driver of the first vehicle to stop at the intersection shall be the first to proceed. If two or more vehicles reach the four-way stop intersection at the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right."

Report the traffic signal malfunction to police as soon as possible.

www.floridasectionite.org/TIPS/TIPS%2069%20Rev%202003.pdf

*(5) Kissimmee Police Department, Kissimmee, FL, Website. police.kissimmee.org*

Word On The Street, A Monthly Newsletter

*Inoperative Traffic Lights at Intersections*
By Becky Albers, Community Service Officer

Welcome to summer in Florida, the lightning capital of the country. We have the further distinction of having south central Orange County and north central Osceola County as the lightning capital of the North American Continent. We are second only to one other location in the world! (Lightning stats from Steve Proctor Osceola County Emergency Services)

Our summer storms produce a heavy amount of lightning. Sometimes the lightning causes power outages, causing traffic signals to go out. We felt it was important to remind everyone the procedures to follow if you come upon and intersection with an inoperative traffic signal.

Florida State Statue 316.1235 states that the driver of a vehicle approaching an intersection in which the traffic lights are inoperative SHALL stop in the manner indicated in state statute 316.123(2).

Florida State Statute 316.123(2) deals with four way stop signs. It states that the driver of the first vehicle to stop at the intersection shall be the first to

proceed. If two or more vehicles reach the intersection at the same time, the
driver of the vehicle on the left shall yield the right of way to the driver on the
right.

That means, if the traffic lights are out of order, for whatever reason, all drivers
will treat the intersection as if it has stop signs at all four corners. Even if you
are driving down 192 and the lights are out of service, you will stop at every
traffic light and follow the rules for a four way stop as written above. The law is
the same if you're on a major highway or small street.

Violation of this statute is a moving violation. Besides the chance of a traffic
crash, a citation would cost $120.50 plus 3 points on your driver's license.
When the traffic lights are out, it is usually due to an emergency somewhere.

The police department cannot cover every intersection in an emergency. Our
citizens need to do their part and set an example to our visitors to make travel
as safe as possible through our community.

kissimmee.org/uploadedFiles/Work/Departments_and_Services/Police_Department/2007%20J
une%20PDF.pdf.

**2.  That admissions made by Defendant Muldrow in his deposition should not be
considered. since Muldrow did not understand those questions posed to him at his
deposition:**

In his Affidavit, Muldrow purports to explain that his answers to questions posed on

pages 58 and 59 of his deposition are taken out of context since he was only answering those

questions generically and not with reference to the circumstances present at the intersection of

U.S. 301 and State Road 26 on the night of the fatal crash.  However Muldrow's deposition

transcript clearly reveals that he is expressing his views as to what was required of him, by law,

when he approached an intersection where the traffic lights were inoperable.  On page 58 the

following exchanges took place:

Q.      Okay.  As part of working for Schneider, they expected you to go into other
        states hauling goods for them, correct?

A.      Right.

Q.      Okay.  Was one of your duties to be familiar with the laws and the statutes with
        regards to truck driving and motor vehicle driving in those states that you
        hauled in?

A.      Yes.

Q.    Okay.  And how did you familiarize yourself with the statutes and the laws of the State of Florida for the many trips that you took here?

A.    Well, I - - well, I know what I have to do when I come to an intersection.

Q.    Okay.  Tell me about that.

A.    I know if there's a stoplight, I know I need to slow down.  If it says stop, I need to stop.

Q.    Okay.  What if the light's inoperable, what's the law?

A.    Well, I guess you need to stop.

Q.    And how do you know that?

A.    I didn't say that I know that.  I said I think you need to stop.

Q.    Okay.  Why do you think that?

A.    It's a busy intersection.

It is undisputable that Muldrow is referring to the site of the fatal traffic crash with his statement, "It's a busy intersection".  This is the very type of testimony that has been held to be inadequate for a party opposing summary judgment as a genuine issue of material fact in dispute.  Muldrow submitted his post deposition affidavit in response to Plaintiff's Motion for Partial Summary Judgment. A post- deposition affidavit is suspect and can be disregarded when the affidavit is prepared for summary judgment and contradicts deposition testimony. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001); Mack v. United States, 814 F.2d 120, 124 (2d Cir.1987); When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657

(11th Cir.1984).

**3.  That statements made by Caleb Pierre should not be considered by this Court:**

Defendants Muldrow and Schneider assert that the statement of Caleb Pierre is impermissible hearsay and not competent evidence for use for any purpose in these proceedings and should not be considered by this court.  Pierre's statement was obtained by Corporal Speigner in relationship to FHP 704-11-034, the fatal traffic crash occurring in Orange Heights that was witnessed by Pierre.  This statement was taken pursuant to the official homicide investigation being conducted by Corporal Speigner, and at the onset of this statement, Pierre was placed under oath pursuant to Section 117.10, Florida Statutes. This statute provides as follows:

> **Law enforcement and correctional officers.**--Law enforcement officers, correctional officers, and correctional probation officers, as defined in s. 943.10, and traffic accident investigation officers and traffic infraction enforcement officers, as described in s. 316.640, are authorized to administer oaths when engaged in the performance of official duties. Sections 117.01, 117.04, 117.045, 117.05, and 117.103 do not apply to the provisions of this section. An officer may not notarize his or her own signature.

After obtaining the taped sworn statement of Pierre, the tape was made part of the official investigation, and subsequently transcribed, at the request of Plaintiff's attorney, by Diane Goukler, a Registered Professional Reporter. Therefore, contrary to Defendants' assertion, the contents of the transcribed recorded statement are not hearsay and may be used as record evidence to support summary judgment. The contents of these reports are admissible hearsay under FRE 803(8)(C) which carves out an exception for hearsay contained in public records and reports consisting of "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." FRE 803(8)(C). The reports at issue were prepared pursuant

to § 316.066, Florida Statutes, and as police accident investigation reports, are admissible under the public records hearsay exception. *Foster v. General Motors Corporation,* 20 F.3d 838 (8th Cir.1994). See, Meals v. City of Memphis, Tenn., 493 F.3d 720, (6th Cir. 2007), (for summary judgment court accepted entire police investigative file and accident report, including all witness statements were authenticated and made an exhibit at deposition of officer responsible for generating and putting the documents together.)

**4. That the deposition testimony presented by David A. Stopper should not be considered by this Court.**

Defendants' object to the testimony of David A. Stopper, a retained expert by Plaintiff, on the basis of Defendants' belief that Mr. Stopper is incapable of expressing opinions as to the responsibilities of a commercial driver.  Mr. Stopper is the owner of Stopper & associates, LLC, a motor carrier, has held a commercial driver's license since the mid 1070's, and averages 40,000 to 50,000 miles a year driving operating Stopper & Associates vehicles. Stopper deposition page 34).

In Ross v. Willard, WL 4374027, ( M.D.La.,2007) the court noted that a reconstruction expert may be qualified to express his views specifically regarding the appropriate standard of care to be exercised by a commercial truck driver operating a tractor trailer rig on a Louisiana highway. See *e.g., Dickenson v. Cardiac and Thoracic Surgery of Eastern Tennessee,* 388 F.3d 976, 980 (6th Cir.2004), *cert. denied,* 544 U.S. 961 (2005) (stating that the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience).

In deposition, Mr. Stopper was asked by Defendants' counsel, "So it is your opinion that the Florida Department of Transportation stop signs had no effect on Mr. Muldrow, the Schneider driver, having the right to go through the intersection without stopping?", Mr. Stopper replied, "Yeah, in my opinion, as a professional driver, it would have absolutely no

effect because he could not possibly know that.  He could not possible know that there would be a temporary sign placed." (Stopper deposition, pages 32, 33).  Clearly this opinion merely restates the undisputed facts that Muldrow was unaware of the temporary barricade stop signs placement and would not be able to see them as he drove southbound on U.S. 301., therefore, under the standard of care of a professional driver, no reliance could be placed thereon.

CONCLUSION

The defendants have clearly failed to demonstrate any genuine issues of material fact relative to the negligence of Muldrow and Schneider, therefore, plaintiffs' motion for partial summary judgment should be granted.

BY: /s/ Scot D.Goldberg
  Florida Bar No.: 0045195
  GOLDBERG, RACILA,
  D'ALESSANDRO & NOONE, LLC
  Attorney for Plaintiff
  P.O. Box 190
  Fort Myers, FL 33902
  (239) 461-5508
  (239) 461-3915 (Facsimile)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 28, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will provide a notice of electronic filing and a copy of the foregoing to Victor M. Halbach, Esquire, Marks Gray, Post Office Box 447, Jacksonville, FL 32201.

  /s/ Scot D. Goldberg
  Florida Bar No.: 0045195
  GOLDBERG, RACILA,
  D'ALESSANDRO & NOONE, LLC
  Attorney for Plaintiff
  P.O. Box 190
  Fort Myers, FL  33902
  (239) 461-5508
  (239) 461-3915 (Facsimile)