IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PAUL DAHLGREN, as Personal
Representative of the Estate of
DAVID AND MARY DAHLGREN,
Deceased,

    Plaintiff,

v.                                                               CASE NO. 1:06-cv-00065-MP-AK

JERRY MULDROW,
SCHNEIDER SPECIALIZED CARRIERS INC.,

    Defendants.

_____/

## **O R D E R**

This matter is before the Court on Doc. 60, Plaintiff's Motion for Partial Summary Judgment, Doc. 59. Plaintiff's Motion in Limine, and Docs. 62, 63, and 64, Defendants' Motions in Limine.  Defendants' have also filed Memoranda in Opposition to Plaintiff's Motion for Partial Summary Judgment and Motion in Limine, Docs. 61 and 67, and have filed a Motion to Strike the Plaintiffs' Response to Defendant's Memorandum in Opposition for Summary Judgment, Doc. 73.  A hearing on these motions was held on Thursday, January 3, 2008.

### **Factual Background**

The following facts are undisputed, except as otherwise noted.  Defendant Schneider Specialized Carriers, Inc., ("SSC"), is a transportation company incorporated in North Dakota, with its principal place of business in Green Bay, Wisconsin.  Defendant Jerry Muldrow is a resident of South Carolina, who owned and operated a tractor trailer, and was driving it pursuant to a dispatch by SSC on September 28, 2004 .  Plaintiff Paul Dahlgren is the son of David and Mary Dahlgren, and brings the instant action as the personal representative of the estate of David

and Mary Dahlgren.

On September 28, 2004, a tractor trailer and an automobile collided at the intersection of United States Highway 301 and State Road 26 in Alachua County, Florida. Defendant Jerry Muldrow was driving the tractor trailer to deliver a cargo of glass that had been dispatched by Defendant Schneider Specialized Carriers, Inc. The tractor trailer struck the 1993 Cadillac owned and operated by David M. Dahlgren, in which his wife, Mary Dahlgren, was a passenger. Both Paul and Mary Dahlgren were instantly killed in the accident.

Prior to the accident, hurricanes Frances and Jeanne had caused a loss of electrical power in the area, and traffic lights at the intersection of U.S. 301 and S.R. 26 were inoperative on September 28, 2004. Because of the inoperative traffic lights, the Florida Department of Transportation ("FDOT") controlled the eastbound and westbound traffic lanes on S.R. 26 by placing temporary stop signs mounted on a barricades with flashing yellow lights attached to them. David Dahlgren stopped at the stop sign facing eastbound S.R. 26, pulled into the intersection, and was struck on the driver-side of his vehicle by the southbound tractor trailer operated by Defendant Muldrow. In the motion for Partial Summary Judgment, Plaintiff alleges that Defendant Muldrow was negligent as a matter of law by failing to stop at the inoperative traffic signal, and therefore summary judgment should be granted as to the issue of liability.

**Legal Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In

determining the existence of a genuine issue of material fact, the Court views the facts in a light favorable to the non-moving party, with the moving party bearing the burden of demonstrating the lack of a genuine issue. If the movant successfully discharges this burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, the existence of a genuine issue of material fact. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u> 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir.1991). An issue of material fact is genuine if the evidence in the record would allow a reasonable jury to return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed. 2D 202 (1986). The purpose of the Court in deciding a summary judgment motion is not to decide issues of material fact, but rather to determine whether such issues exist to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If a genuine issue of material fact exists, then summary judgment must be denied. <u>Hutcherson v. Progressive Corp.</u>, 984 F. 2d 1152, 1155 (11th Cir. 1993).

## **Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for partial summary judgment as to the issue of liability in this case, arguing that there are no material facts in dispute as to the liability of the Defendants. It is undisputed that all signal and warning lights controlling the intersection were non-functioning on account of the power outage. Because of this, Michael Pons, a maintenance engineer for the Florida Department of Transportation placed temporary stop signs at the intersection of S.R. 36 and U.S. 301, controlling the eastbound and westbound traffic. These stop signs were mounted on barricades with flashing yellow lights attached to them. The traffic heading north and south

was not controlled by any stop sign.  Defendant Muldrow was heading south on U.S. 301 when he collided with the Dahlgren vehicle heading east on S.R. 26, and the central issue for liability is whether Defendant Muldrow had a duty under Florida law to stop at the intersection.

Relying on Florida Statute Section 316.1235, Plaintiff argues that the Defendants are negligent as a matter of law, and therefore partial summary judgment on the issue of liability is appropriate.  That statute provides as follows:

> **316.1235 Vehicle approaching intersection in which traffic lights are inoperative.--**The driver of a vehicle approaching an intersection in which the traffic lights are inoperative shall stop in the manner indicated in s. 316.123(2) for approaching a stop intersection. In the event that only some of the traffic lights within an intersection are inoperative, the driver of a vehicle approaching an inoperative light shall stop in the above prescribed manner. A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318.

Defendants respond that this statute is intended to govern traffic when an intersection, normally controlled by traffic lights, becomes uncontrolled.  The Defendants argue that the intersection was not uncontrolled when this accident occurred, since the FDOT had chosen to control the intersection by placing temporary stop signs facing both the east and west approaches to the intersection for motorists on S.R. 26.  The Defendants contend that another Florida Statute applies–Section 316.123(1)(2)(a), the "yield right of way statute."  That statute provides as follows:

> **316.123 Vehicle entering stop or yield intersection.--**
> (1) The right-of-way at an intersection may be indicated by stop signs or yield signs as authorized in s. 316.006.
> (2)(a) Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before

>  entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection.

Defendants argue that if this statute applies, then summary judgment is inappropriate because a jury could conclude that the accident was solely caused by the failure of David Dahlgren to yield the right of way. Defendants cite the testimony of Corporal Brain Speigner, the Florida Highway Patrol Crash Investigator, and Michael Pons, a maintenance engineer for the FDOT who placed the temporary stop signs at the intersection. Both stated in their depositions that they believed the intersection was governed by Section 316.123(1)(2)(a), and that the intersection was being controlled by the temporary traffic control devices. Plaintiff responds that Defendant Muldrow could not have know that temporary stop signs were erected, and he was therefore required to treat the intersection as a four-way stop.

It is uncontested that the FDOT chose to place temporary stop signs on S.R. 26, and chose not to put any temporary stop signs on U.S. 301. An intersection where traffic is not controlled by traffic control signals or by a traffic officer is an "uncontrolled intersection." The decision by the FDOT to erect temporary stop signs served to regulate the traffic control in the area, thereby turning an uncontrolled intersection into a controlled intersection. The situation would have been no different had a traffic officer decided to manually direct traffic. Regardless of the fact that the traffic lights were inoperative, the intersection was controlled by traffic control signals.[1] Therefore, the duty imposed by Florida Statute Section 316.1235 was no longer

---

[1] In <u>Gulley v. Pierce</u>, 625 So.2d 45 (Fla. 1st DCA 1993), the First District Court of Appeals explained the differences between the two types of traffic control devices are defined within the Uniform Traffic Control Law.

> Official traffic control devices consist of "signs, signals, markings, and devices, . . . placed or

in effect, and Section 316.123(1)(2)(a) applied. The temporary stop signs controlled traffic in both directions on S.R. 26, and made U.S. 301 a through highway without any traffic control signals.

Viewing the facts in a light favorable to the non-moving party, the Court finds that a genuine issue of material fact exists as to the liability of the Defendants. Mr. Dahlgren stopped at the temporary stop sign on S.R. 26, and was crossing the intersection when his vehicle was struck by Defendant Muldrow heading southbound on U.S. 301. The issue of liability in this case is a classic jury question, which accordingly should be answered by a jury. Because evidence in the record would allow a reasonable jury to return a verdict for the Defendants, summary judgment on the issue of liability must be denied.

## Motions in Limine

Both parties have filed Motions in Limine. Docs. 59, 62, 63, and 64. Both parties have also filed responses in opposition to the other's motions. Docs. 67, 70, 71, and 72. Although the Federal Rules of Evidence do not explicitly authorize motions in limine, they form part of the district court's inherent authority to manage the course of trials granted by Rule 611(a). See Ohler v. United States, 529 U.S. 753, 754 (2000); Luce v. United States, 469 U.S. 38, 41 n.4 (1984). Accordingly, the Court will considered the instant motions.

---

erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic." The other, designated an official traffic control signal, is defined as "[a]ny device, whether manually, electrically, or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed."

Id. at 48-49 (internal citations omitted). The temporary stop signs erected by the FDOT clearly regulated traffic on S.R. 26, and are traffic control devices or signals under Florida law.

*Case No: 1:06-cv-00065-MP-AK*

### *Plaintiff's Motion in Limine*

The Plaintiff has filed a motion seeking to prohibit any counsel, party, or witness from making any statements, references, arguments, or introducing any evidence or arguments concerning (1) the placement of temporary stop signs on S.R. 26; (2) any references to the fault of non-parties; (3) lay opinions regarding Defendant Muldrow not having to stop at the inoperative traffic signal; and (4) hearsay statements contained in police and investigative reports.

Plaintiff argues that the placement of temporary stop signs on S.R. 26 is irrelevant, and will confuse the jury as to the salient issues in this case.  Defendants argue that the Plaintiff is seeking to hide a very important fact from the jury, and thus present a false picture of the actual circumstances at the accident intersection on the night of the accident.  This issue is directly tied to what Florida Statute controls in this case, which has already been decided.  Because the intersection was controlled by the stop signs, the placement of the temporary stop signs is extremely relevant to the issue of negligence.  Therefore, this part of Plaintiff's motion is denied.

As to barring any statement relating to the alleged fault of any non-parties, Defendants point out that Plaintiff has failed to identify any specific non-party who may by allegedly at fault.  If the Plaintiff is referring to testimony critical of the FDOT, then the Defendants agree with the Plaintiff's motion.  Because the FDOT is not a party to the lawsuit, to allow such testimony would mislead and confuse the jury by linking the liability of Defendants Muldrow and SSC with any potential fault of the FDOT.  But the Plaintiff seeks an order precluding discussion of some unidentified non-party, and Defendants argue that the Court should deny the relief requested because there is no legal basis shown for the request.  The Court agrees with the

Defendants. Defendants have not alleged that a non-party is at fault, and Plaintiff has failed to name or to indicate which specific non-party it seeks to prevent Defendants from attributing fault. Therefore, this part of Plaintiff's motion is also denied.

Plaintiff's third ground in its motion in limine seeks to exclude lay opinion testimony regarding whether Defendant Muldrow had a legal duty to stop at the inoperative traffic signal. Under the Federal Rules of Evidence, a non-expert witness is generally prohibited from testifying about matters based on scientific, technical, or other specialized knowledge within the scope of Federal Rule of Evidence 702, which governs the admissibility of expert testimony. Under that rule, a court may permit testimony of a witness properly qualified as an expert. This requires a "rigorous three part inquiry." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). The Court must determine whether

> (1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

The proponent of the expert bears the burden of proving that the witness is properly qualified as an "expert" witness.

Regardless of whether a witness is a lay witness or an expert witness, all witnesses generally are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct. The determination of which law applies and what the law means is for the Court to decide. The determination of compliance with a law is for the jury to decide. Expert opinion testimony must assist the trier of fact, through specialized knowledge, to understand the evidence or to determine a fact in issue.

Expert testimony that merely tells the jury what legal conclusion to reach fails to do that. While, as a general rule, a witness cannot state a conclusion, or opinion, on what the law is, they may give an opinion on an issue of fact relating to the law.

In this case, no witness could testify about whether Defendant Muldrow's conduct conformed to the law of Florida. Plaintiff does not address his motion to this issue, and instead seeks a general ban on any lay witness offering an opinion that Defendant Muldrow was not required to stop at the intersection. Witnesses may offer helpful opinions, inferences, and conclusions rationally based on their own personal knowledge, but may not give an opinion that a party complied or failed to comply with the law. Because Plaintiff, however, does not name which witness or indicate which statement it seeks to prohibit the introducing, Plaintiff's motion is denied.

Finally, regarding Plaintiff's last issue in the motion in limine, the Defendants agree with the Plaintiff that hearsay statements should not be admitted into evidence, but request that the Court not grant the relief requested because no witness is identified and no hearsay by any witness is identified. Plaintiff refers to hearsay statements of witnesses contained in police and investigative reports. Federal Rule of Evidence 803(8)(B) and (C) allows the introduction of police and investigative reports in civil cases, but hearsay statements by third persons contained in those reports must fall within hearsay exception to be admissible. While the Court agrees with the general proposition stated by Plaintiff, because no specific hearsay statement has been identified, Plaintiff's motion in limine must be denied.

### *Defendants' Motions in Limine*

The Defendants have filed three motions in limine. In the first motion, the Defendants

move the court for issuance of an order precluding the Plaintiff's attorneys (1) from making any statements to the jury or making references during the questioning of witnesses to Section 316.1235, Fla. Stat., and (2) from suggesting that the intersection of United States Highway 301 and State Road 26 should have been treated as a four-way stop intersection at the time of the subject accident. Defendants argue that the four-way stop statute did not apply to the circumstances present at the accident intersection at the time of the accident because the FDOT had chosen to control the intersection by placing temporary stop signs facing both the east and west approaches to the intersection for motorists on S.R. 26. The Court has previously ruled that the "yield right of way statute" applies in this case. Therefore, the Court agrees with the Defendants that to allow Plaintiff's counsel to urge the application of the four-way stop statute would be improper due to its non-applicability. Accordingly, Defendants' First Motion in Limine, Doc. 62, is granted.

Defendants' second motion in limine seeks an order preventing the Plaintiff from introducing into evidence criticism of the FDOT based upon its failure to comply with the Manual on Uniform Traffic Control Devices ("MUTCD") and related interpretations or comments about that publication. Defendants claim that the MUTCD documents are not relevant to any claim or defense in this case since the FDOT is not a party to this case. Because the MUTCD does not impose a duty on private citizens to obey the regulations, Defendants state that it is irrelevant, and should not be allowed into evidence. Furthermore, allowing criticism of the FDOT for failing to abide by the MUTCD regulations would prejudice the Defendants through imputed negligence.

The Plaintiff's response is that the FDOT's failure to follow the MUTCD regulations

rendered the intersection "uncontrolled," which required Defendant Muldrow to treat it as a four-way stop. As stated preciously by the Court, the decision by the FDOT to erect temporary stop signs served to regulate the traffic control in the area, thereby turning an uncontrolled intersection into a controlled intersection. The FDOT is not a party to this suit, and any failure by the FDOT in following the MUTCD regulations is irrelevant to the issues in this case. Therefore, Defendants' Second Motion in Limine, Doc. 63, is granted, and Plaintiff is prohibited from introducing into evidence criticism of the FDOT based upon its failure to comply with the Manual on Uniform Traffic Control Devices.

Finally, in Defendants' third motion in limine, they move for an order precluding the Plaintiff's attorneys from (1) making any statements to the jury or making references during the questioning of witnesses regarding commercial motor vehicle operators being held to a higher standard of care than other highway users, and (2) seeking a jury instruction to that effect. Plaintiff relies on a document entitled "Interpretations of 49 C.F.R. Part 383" published by the Federal Highway Administration's Office of Motor Carrier Standards, Standards Review Division, for the proposition that commercial motor vehicle operators are held to a higher standard of care.

Defendants argue that the interpretation at issue lacks the force and effect of law. Specifically, Defendants point out that this interpretation was removed, and the Federal Highway Administration stated in issuing the Regulatory Guidance that "all prior interpretations . . . may no longer be relied upon as authoritative insofar as they are inconsistent with the guidance published today." Currently, nowhere in the Federal Motor Carrier Safety Regulations does it state that truck drivers are generally held to a higher standard of conduct than other highway

users.  Because almost every jurisdiction faced with the issue of imposing a higher standard of care on truck drivers–including Florida–has held that they should be held to a standard of ordinary due care, not a higher standard, Defendants move to bar any such statement by the Plaintiff.

Plaintiff does not directly respond to this issue, but instead relies on its prior arguments.  After reviewing this matter, the Court agrees with the Defendants that Defendant Muldrow, as a commercial motor vehicle operator, is held to the ordinary standard of care.  To allow Plaintiff to argue otherwise would misstate the law and prejudice the Defendants.  Therefore, Defendants' Third Motion in Limine, Doc. 64, is granted, and Plaintiff's attorney is prohibited from making any statements to the jury, or making references during the questioning of witnesses, regarding commercial motor vehicle operators being held to a higher standard of care than other highway users, or from seeking a jury instruction on this issue.

## Motion to Strike

The Defendants have filed a Motion to Strike Plaintiff's Response to Defendants' Memorandum in Opposition for Summary Judgment.  By prior order, the parties were required to file any motions in limine and any motions for summary judgment on or before Friday, December 14, 2007.  On December 28, 2007, Plaintiffs filed a "Response to Defendant's Memorandum in Opposition for Summary Judgment." Doc. 69.  Because this Response contains arguments not made in the Plaintiff's original motion for partial summary judgment or in the amended motion for partial summary judgment, Defendants argue that it is contrary to the requirements requiring all materials to be used in support of a motion for summary judgment be filed on or before the pretrial conference.  Defendants also state that the Plaintiff's Response does

not follow Local Rule 7.1 (C)(2), which provides: "**Rule 7.1 (C) Responsive and Reply Memoranda.** . . . (2) No reply memoranda shall be filed absent a showing of good cause and upon leave of the court." Since no leave was given to file the reply memorandum, Defendants move for the Response to be stricken on this ground as well.

At the hearing, counsel for Plaintiff admitted that he did not seek leave from the Court to file a Reply. Because of this, counsel did not contest the Defendants' Motion to Strike. Therefore, the Motion to Strike is granted, and Plaintiff's Response to Defendants' Memorandum in Opposition for Summary Judgment is hereby stricken from the record. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Partial Summary Judgment, Doc. 60, is DENIED.

2. Plaintiff's Motion in Limine, Doc. 59, is DENIED.

3. Defendants' Motions in Limine, Docs. 62, 63, and 64, are GRANTED.

4. Defendants' Motion to Strike, Doc. 73, is GRANTED, and Plaintiff's Response to Defendants' Memorandum in Opposition for Summary Judgment, Doc. 69, is hereby stricken from the record.

**DONE AND ORDERED** this   *18th* day of January, 2008

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge